UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA


UNITED STATES OF AMERICA

v.                                  Docket No.: 2:18-cr-215

JAY JAMES FIELDS


**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
TO SUPPRESS EVIDENCE OBTAINED AT A STOP MADE WITHOUT
REASONABLE SUSPICION, WHICH VIOLATED DEFENDANT'S RIGHTS
UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

Defendant has filed a Motion to Suppress Evidence Obtained at a Stop Made Without Reasonable Suspicion, Which Violated Defendant's Rights Under the Fourth Amendment to the United States Constitution.  Now, Defendant files this Memorandum in support of such Motion.  Defendant's Motion should be granted for the reasons contained herein.

## I. INTRODUCTION

As set forth in Defendant's Motion to Suppress, the following facts are established.  On November 3, 2017, an individual called the Logan County 911 Center and reported on two "suspicious" people who the caller thought might be carrying drugs.  The caller also thought the male was carrying a gun.  The caller described the male as being white, with straggly hair and wearing a white hoodie and blue jeans.  The caller stated that the woman was also white and had pink hair.  The caller also gave location information regarding where the individuals were walking.

The 911 dispatcher made a call out for a law enforcement officer in the Greenville area, and/or on Greenville Road. After receiving a reply, the dispatcher asked that the Deputy Sheriff to be on the look out for two "suspicious" individuals, a white male wearing a hoodie and blue jeans and a white female wearing a pink sweater[1]. The couple were walking towards Man, West Virginia. No other information was provided. Based solely on that call, the Deputy Sheriff, on seeing Mr. Fields and his girlfriend stopped his vehicle, got out and told the couple that he wanted to talk to them and directed them to go stand by the end of his vehicle. When Mr. Fields did not respond, the Deputy repeated his order to go stand by his vehicle so he could question Defendant. Defendant panicked and attempted to flee. The Deputy pursued. During the pursuit, the Deputy grabbed Mr. Field's sweatshirt, taking it off him. At the same time, a gun fell off Mr. Fields person. Eventually, Mr. Fields was apprehended and he and his girlfriend were taken into custody. Mr. Fields girlfriend gave a statement incriminating Defendant. Mr. Fields was arrested for being a felon in unlawful possession of a firearm. Such charge was taken up by United States of America. Under these facts, Defendant's Motion to Suppress should be granted.

---

[1] Actually, the 911 caller stated that the woman had pink hair, not a pink sweater. Below, there will be a discussion about whether everything the 911 caller said to the dispatcher should be considered in determining whether reasonable suspicion existed to stop Mr. Fields, or just the information known by the officer who made the stop. The fact that the dispatcher could not accurately convey the information that he was told demonstrates why the key should be what the dispatcher told the stopping officer, not what the 911 caller told the dispatcher.

# Ii. ARGUMENT

## DEFENDANT'S MOTION TO SUPPRESS SHOULD BE GRANTED BECAUSE THERE WERE NOT SUFFICIENT FACTS KNOWN TO THE STOPPING OFFICER TO ESTABLISH A REASONABLE SUSPICION THAT MR. FIELDS HAD, OR WAS ABOUT TO, COMMIT A CRIME

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons ...against unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, "a brief investigatory stop[2] is impermissible unless the officer's action is supported by a reasonable and articulable suspicion ... that criminal activity 'may be afoot,' " United States v. Bumpers, 705 F.3d 168, 171 (4th Cir. 2013) (quoting Terry v. Ohio, 392 U.S. 1, 30, 88). To determine whether a law enforcement officer had reasonable suspicion, courts look to "the totality of the circumstances."

While "a mere 'hunch' is insufficient," reasonable suspicion is less demanding than probable cause "and may well 'fall[ ] considerably short of satisfying a preponderance of the evidence standard.' " United States v. Massenburg, 654 F.3d 480, 485 (4th Cir. 2011) (citation omitted). While "seemingly innocent factors, when viewed together, can amount to reasonable suspicion," the Fourth Circuit is skeptical of "Government attempts to spin ... largely mundane acts into a web of deception." See United States v. Foster, 634 F.3d 243, 248 (4th Cir. 2011). Accordingly, "the Government cannot rely upon post hoc rationalizations to validate those seizures that happen to turn up contraband." Id. at 249.

In this case, the alleged reasonable suspicion was prompted by an "anonymous" 911 call. An often cited case from the Fourth Circuit discussing factors to consider to determine whether an anonymous 911 caller provides information that establihes reasonable suspicion is United

---

[2] These types of stops are often referred to as "Terry stops."

States v. Elston, 479 F.3d 314 (4th Cir., 2007)[3]. In that case, the Fourth Circuit noted certain factors to consider regarding whether the 911 call provides enough information to establish reasonable suspicion. Such factors include whether it "provides substantial detail about the individuals and the alleged criminal activity it describes; if it discloses the basis of the informant's knowledge; and, especially, if the informant indicates that her report is based on her contemporaneous personal observation of the call's subject. . . . Another— and even more significant—indicator that an anonymous informant is reliable is her disclosure of information that would enable authorities to identify her if they deem it necessary to do so."
Elston, 479 F.3d at 318.

In reaching its decision, the Elston Court discussed two relevant precedents regarding whether an anonymous tip provided reasonable suspicion for a Terry stop: one from the United States Supreme Court of Appeals, Florida v. J.L., 529 U.S. 266 (2000), and one from the Fourth Circuit, United States v. Brown, 401 F.3d 588 (4th Cir.2005). As the Elston Court noted: "JL involved an anonymous tip 'that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun'" Elston, 479 F.3d at 317 (citation omitted) . The Supreme Court ruled that this "bare-boned," anonymous tip, standing alone, was insufficient to justify a Terry stop. Id. at 317 (citation omitted).

The Elston Court also noted: "Our 2005 decision in Brown applied the principles of JL to an anonymous report that 'a short, black male with glasses was carrying a firearm outside the

---

[3] Elston assumed for the purposes of deciding that case that a 911 caller that gives her name, but such name is not shared with the law enforcement officer that orders the stop, is to be treated as an "anonymous" informer, but did not decide that issue. However, as will be discussed below, the key to determining whether reasonable suspicion exists is what is known by the officer who ordered the stop. In the present case, such officer did not know the identity of the 911 caller, even though the caller did provide his name. Thus, for the purposes of this Motion, the caller was anonymous.

Roseman Court apartment complex' in Newport News, Virginia. Id. at 317-18. We concluded that so spare a tip, coming from an anonymous informant, lacked the indicia of reliability necessary to justify a Terry stop." See id. at 318

Ultimately, the Elston Court distinguished the facts that it faced from those of JL and Brown. In that case, the officers who made the stop were told a great detail about the defendant's appearance, his weapon, that he uttered a threat to shoot someone, that the 911 caller's information was based on a visual siting, the caller had provided enough information so that she could be located if necessary and, very significantly, the caller was reporting a direct and imminent threat to public safety. Id at 318-19. Based on the totality of these factors, the Elston Court ruled that there was reasonable suspicion for the stop.

Another good case for this Court to consider is the unpublished opinion in United States v. Bryant, Docket No.: 15-4618 (4th Cir., 2016).[4] In Bryant, the defendant was charged with felon in possession of a firearm as a result of evidence obtained pursuant to a Terry stop. Id. at 5. In that case, an anonymous 911 caller identified the defendant by his full name, gave Bryant's birth date, likely location, that he was a felon and that he had a gun in a brown satchel. Id. at 2-3. Upon locating and then approaching the defendant, the officer thought Bryant looked nervous, did not establish eye contact, and spoke in a low voice. Id. at 4. When asked if he had a gun in his satchel, the defendant turned his back to the officer. Id. at 4-5. The officer, fearing that he could get shot, took control of the bag and retrieved the gun. Id. at 5.

The Bryant Court determined that these factors were not enough to establish reasonable suspicion. Id. at 8. It held that the "tipster" provided very little useful information that would justify the suspicion that Bryant was, or was about to be, engaging in criminal activity. The

---

[4] A copy of this case is attached hereto.

Court noted that while the tipster provided more information then the one in JL, his name, birth date and that he was a felon, this information identified Bryant as a person and did not provide information regarding illegal conduct. Id. at 11.  Additionally, the Court discounted the signs that Bryant was nervous as such attribute is normal for anyone who is stopped by the police.  The Fourth Circuit ruled that there was no sign that the defendant was nervous beyond what would be a normal under the circumstances.  Id. at 13-14.  Thus, the Bryant Court reversed the district court's denial of the defendant's motion to suppress.  Id. at 16-17.

Under the just discussed jurisprudence, Defendant's Motion to Suppress should be granted.  The information from the 911 caller that was passed along to the Deputy Sheriff who stopped Mr. Fields was only that he was wearing a white hoodie and blue jeans and that he was with a woman who had a pink sweater.  As stated in Bryant, this type of evidence is relevant to the identification of Fields as an individual, but does not provide reasonable suspicion that he is engaged in criminal conduct.  In fact, there is no more information here then the officer had in JL and is far less then the evidence to support reasonable suspicion in Bryant.  Thus, under the totality of the circumstances, there is not nearly enough evidence of criminal activity for a Terry stop.

The Government may make two arguments to bolster its case.  First, it may argue that this Court should consider everything that the 911 caller told the dispatcher, even if the dispatcher did not relay that information to the Deputy who stopped Mr. Fields.  However, the Fourth Circuit disapproves of such argument, as demonstrated in the case of United States v. Foster, 824 F.3d 84 (4th Cir., 2016).

This case discussed many factors in deterining the issue of reasonable suspcion, including factors already discussed above.  Like JL, Brown and Bryant, the Court discounted the "bare

bones" information provided by a 911 caller. Id at 91-92. Like Bryant, it discounted evidence that the defendant was "nervous," finding that he was not unduly so. Id. at 92-93. However, Foster also discussed whether the Government could use information that was unknown to the officer who ordered the stop to bolster its case that a reasonable suspicion existed.

The way that this issue arose was during a discussion of whether certain evidence that the defendant was under the influence of drugs could be used to assist in establishing that there was reasonable suspicion. Id. at 91. An officer Burke, who was one of the two officers on the scene, and the one who ordered the stop and frisk, stated that he believed that the defendant could "possibly" have been under the influence. Id. at 87, 91. The other individual on the scene, an officer Boyer, was more positive, believing that the defendant was likely to have been under the influence because his eyes looked glassy. Id. at 87. On appeal, the Government argued that the issue of whether the defendant was under the influence of drugs at the time he was stopped was relevant because Boyer thought he was, even though she was not the one who ordered the stop and frisk. The Foster Court ruled that because Boyer never communicated her thoughts to Burke, Boyer's opinion should be discounted. Id. at 91. And since Burke only thought Foster could possibly have been under the influence, this evidence did not support the existence of a "reasonable suspicion." Id.

Just as the FosterCourt discounted Boyer's knowledge because she did not communicate the same to Burke, so should any knowledge that the 911 dispatcher had that he did not communicate to the Deputy Sheriff who made the Terry stop be discounted. The issue is what evidence does the officer who made the stop have. Does that knowledge and that knowledge alone, justify the Terry stop. As argued above, here it certainly does not.

Finally, the Government may point out that that the fact that Mr. Fields attempted to flee as providing reasonable suspicion for the Terry stop. And Defendant admits, that under the cases of Illinois v Wardlow, 528 U.S. 119 (2000) and United States v. Bumpers, 705 F.3d 168 (4th Cir., 2013) flight is a "circumstance" that can be considered in determining whether there is a reasonable suspicion to make a stop[5]. The problem with the Government's position, however, is that the stop occurred before Mr. Fields attempted to flee. The Deputy Sheriff had already left his vehicle, approached Defendant, told him that he wanted to talk with him and ordered Mr. Fields to come stand at the end of his cruiser. This is a stop. And there was no reasonable suspicion to support the same.

### III. CONCLUSION

Mr. Fields Motion should be granted for the reasons contained herein.

JAY JAMES FIELDS
By Counsel

S/ Andrew J. Katz
Andrew J. Katz (6615)
The Katz Working Families' Law Firm, LC
The Security Building, Ste 1106
100 Capitol Street
Charleston, West Virginia 25301
(304) 342-5579

---

[5] Importantly, neither case suggested that fleeing an officer by itself provides reasonable suspicion justifying a stop. In both Wardlow and Bumpers, there were other factors that supported a finding of reasonable suspicion, particularly that the events in question occurred in dangerous, drug infested areas. Here, in light of the fact that the information received by the Deputy Sheriff who made the stop from the dispatcher was so slight, that even had the flight occurred before the stop, there would not been enough evidence to constitute reasonable suspicion.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.                                        Docket No.: 2:18-cr-215

JAY JAMES FIELDS

## CERTIFICATE OF SERVICE

       I, Andrew J. Katz, counsel for Defendant Jay James Fields. do hereby certify that I have on the 27th day of February, 2019 caused to be served a true copy of Defendant's **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AT A STOP MADE WITHOUT REASONABLE SUSPICION WHICH VIOLATED DEFENDANT'S RIGHTS UNDER THE FOURTH AMENDMENT OF THE UNITED STATE CONSTITUTION ,** via email transmission through the CM/ECF filing system on the following individual:

                                       Christopher R. Arthur, Assistant
                                       United States Attorney


 S/ Andrew J. Katz
Andrew J. Katz (6615)